ANNIE B. CROCKER & others *vs.* CHARLES U. COTTING
& others.

Suffolk.    March 30, 1896. — May 22, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Deed — Boundary on Passageway — Equity.*

The rule by which the mention of a way as a boundary in a conveyance of land is presumed to mean the middle of the way, if the way belongs to the grantor, is not an absolute rule of law irrespective of manifest intention, but is merely a principle of interpretation adopted for the purpose of finding out the true meaning of the words used.

A. owned two parcels of land, one situated on the corner of B. Street and C. Street, and the other on C. Street, separated by a passageway five feet wide opening into C. Street. The corner parcel, which was on the north of the passageway, formerly consisted of two lots belonging to different owners, one on the corner of the streets and the other east of it, each of which was part of a large lot and existed before the passageway was created, and ended on the north side of it. In 1843, the lot next to the corner one was conveyed to D., a predecessor in title of A., by a deed, which stated that the land was "part of the land described in " a deed, which was the deed of the large lot above mentioned and conveyed no land under the passageway. The deed to D. was made with reference to a plan which showed the lot as ending on the north of the way; it gave measurements, all of which excluded the way; and bounded the lot "southerly by a five feet passageway." In 1857, the successor of D. and predecessor of A. in title became party to a deed which purported to sell to him and those owning the land next east of his land, as tenants in common, the fee of the passageway for a substantial consideration, he setting up no title as against his co-purchasers to any part of the land. The second parcel owned by A., on the south of the passageway, was also conveyed to his predecessor in 1843, by a deed which bounded it "northerly by a five feet passageway." In 1858, A.'s immediate predecessor in title to this lot, who also owned the northerly corner lot, having extended certain rods over the way in order to support a chimney on the latter lot, executed a disclaimer of right to maintain the rods and a covenant to remove them on request to the owners of the land east of A.'s corner parcel, in which he recited that they were the owners in fee of the passageway. The fee of the northerly half of the way at its entrance south of A.'s corner parcel was retained by those who laid out the way. *Held,* upon a bill in equity by A. to restrain the owner of the land east of his land on B. Street from interfering with the erection of a bridge across the passageway, that the deeds under which A. claimed did not convey any part of the fee under the way.

On a question of the construction of a deed, a number of facts all pointing the same way may have an effect which no one of them would have had alone.

BILL IN EQUITY, filed August 20, 1895, against Charles U. Cotting and Francis C. Welch, trustees under the will of Samuel

K. Williams, Jonathan A. Lane, John C. Lane, and George S. Winslow, trustees under the will of George S. Winslow, and the Murdock Parlor Grate Company, which corporation was the tenant of Cotting and Welch, to restrain the defendants from forcibly interfering with the plaintiffs in the erection of a bridge across a passageway lying between two parcels of land belonging to the plaintiffs, one situated on the corner of Boylston Street and Carver Street, and the other on Carver Street, in Boston, and shown on the following plan. The defendants

BOYLSTON STREET.

filed cross-bills to restrain the erection of the bridge. Hearing on the bill and cross-bills before *Barker,* J., who found that the fee of the way was owned in common by the plaintiffs and defendants; entered a decree refusing an injunction on the original bill, and granting an injunction on each of the cross-bills; and, at the request of the parties, reported the case for the determination of the full court. If the decree was warranted, it was to stand; otherwise, such modification therein, or other order, was to be made as law and equity might require. The facts appear in the opinion.

*S. Lincoln & F. Rackemann,* (*F. V. Balch* with them,) for the plaintiffs.

*G. Putnam & W. L. Putnam,* for the trustees under the will of Samuel K. Williams.

*Z. S. Arnold,* for the trustees under the will of George S. Winslow.

HOLMES, J.  The original bill in this case was brought to enjoin the defendants from forcibly interfering with the plaintiffs in the erection of a bridge across a passageway five feet wide lying between two parcels of land in Boston belonging to the plaintiffs.  The plaintiffs claim a title to the fee under all of the passageway except the northerly half of a part of it lying nearest to Carver Street, into which it opens.  Their title rests on deeds executed by the owners of the land in question, to one Dexter and one Bates, in 1843.  The defendants claim title to the fee of the way in common with the plaintiffs under two deeds from the former owners, executed in 1858 and 1859.  The defendants' title is disputed only on the ground of the above mentioned earlier conveyances.  The defendants bring cross-bills setting up their title, and praying an injunction against the erection of the bridge.  The question turns, it will be seen, on the construction of the deeds to Dexter and Bates, each of which bounded the land conveyed " by a five feet passageway."

The rule by which the mention of a way as a boundary in a conveyance of land is presumed to mean the middle of the way, if the way belongs to the grantor, is not an absolute rule of law irrespective of manifest intention, like the rule in Shelley's case, but is merely a principle of interpretation adopted for the purpose of finding out the true meaning of the words used.  *Codman* v. *Evans,* 1 Allen, 443, 446.  *Motley* v. *Sargent,* 119 Mass. 231, 235.  We are of opinion that, on the facts of this case, the words used in the conveyances upon which the plaintiffs rely did not purport to convey any part of the fee under the passageway in question.

We take first the land on the north of the passageway.  This formerly consisted of two lots belonging to different owners. One of them, at the corner of Boylston and Carver Streets, was a separate lot before the passageway was created, and is admitted to end on the north side of the passageway.  The other lot,

next to the east, was part of a large lot like the last, which also existed before the date of the passageway, and also ended on the north side of it. The deed which the plaintiffs say extended the southern boundary of this lot to the middle of the way was made on May 10, 1843, to one Dexter. It stated that the land conveyed was " part of the land described in deeds recorded in Lib. 400, fol. 186, etc. of Suffolk Deeds." The deed referred to is the deed of the large lot just mentioned, and conveyed no land under the passageway. *Ingalls* v. *Newhall*, 139 Mass. 268. The deed to Dexter was made with reference to a plan of Alexander Wadsworth. It gives measurements and contents to the fraction of a foot, all of them excluding the way. The plan shows the lot as ending on the north of the way. The deed bounds the lot " westerly by land now or late of Allen Pollock one hundred and twelve feet four and an half inches," which is the above mentioned parcel at the corner of Boylston and Carver Streets, and is a monument extending only to the north side of the passageway. See *Smith* v. *Slocomb*, 9 Gray, 36. A right of passage over the way is granted in terms, and nothing is said about the rights reserved. We may assume that the legal effect is not changed, but there is an implication of understanding as to the title in the combined speech and silence. *Stearns* v. *Mullen*, 4 Gray, 151, 154. The same persons did not own on both sides of the way. The wife of the grantor Clark, in the deed to Dexter, owned one undivided fourth of the fee under the way, and did not use the language which naturally would have been used had she intended to convey what she held in her own right. As has been implied already, the division into lots and the way were not parts of one scheme devised by the owner of the whole. *Gould* v. *Eastern Railroad*, 142 Mass. 85. *Peck* v. *Denniston*, 121 Mass. 17. It is admitted on all hands that the fee of the northerly half of the passageway at its entrance south of the plaintiffs' lot on the corner of Boylston and Carver Streets remained in those who laid out the way. This being so, and the state of the title making the fact manifest, it is not very likely that the parties concerned thought that they were making a checker-board of the way, conveying a part here and keeping a a part there.

In 1857, one Dalton, the successor of Dexter and predecessor

of the plaintiffs in title, became party to the deeds under which the defendants claim, which purported to sell to him and to those who then were the owners of the defendants' lot, as tenants in common, the fee of the passageway for a substantial consideration, Dalton setting up no title as against his fellow purchasers to any part of the land. This, if not an estoppel, is of weight as a practical construction of their rights by the parties. *Stone* v. *Clark*, 1 Met. 378.

There can be no doubt that the understanding indicated by all these facts actually was entertained, in view of the state of the law, a circumstance which may be considered with due caution along with the others. The fact that all the world agree in a certain view of the law will throw the same light on the meaning of words, whether the view be right or wrong. See *Staigg* v. *Atkinson*, 144 Mass. 564, 569. As late as 1855, the application of the now accepted rule of law to boundaries upon private passageways was uncertain. *Morgan* v. *Moore*, 3 Gray, 319, 320. In 1857, the court were divided on the question. *Fisher* v. *Smith*, 9 Gray, 441. Before *Newhall* v. *Ireson*, 8 Cush. 595, (1851,) under the older decisions like *Tyler* v. *Hammond*, 11 Pick. 193, 213, and *O'Linda* v. *Lothrop*, 21 Pick. 292, 295, a deed like that to Dexter would have been supposed to convey only to the edge of the way. See *Phillips* v. *Bowers*, 7 Gray, 21, 24.

Although some of the foregoing considerations taken by themselves would not be enough to affect the construction of the Dexter deed, taken all together they seem to us to outweigh the single expression " bounded . . . southerly by a five feet passageway." It is argued for the plaintiffs that none of them taken singly would be enough, and that taken together they can do no more. We do not consider whether the premise is correct, because in our opinion the consequence does not follow. On a question of construction, a number of facts all pointing the same way may have an effect which no one of them would have had alone.

We turn now to the deed under which the plaintiffs claim title to the southerly half of the passageway. This was a deed to Bates, dated January 28, 1843. The language relied on is similar to that in the other conveyance, " bounded . . . northerly by a five feet passageway," and it is met by similar considerations. There is the same improbability arising from the admitted

retention by the grantors of the opposite half of the passageway at its mouth on Carver Street. There is nearly the same accuracy of measurement and expression as in the deed to Dexter, and the figures coincide, as before, with those on the Wadsworth plan.

In October, 1858, after the execution of the deeds under which the defendants claim, Keep, a successor of Bates and predecessor of the plaintiffs in the title to the land south of the passageway, and also then owner of the northerly lot at the corner of Boylston and Carver Streets, having extended certain rods over the passage in order to support a chimney on the last mentioned lot, executed a disclaimer of right to maintain the rods and a covenant to remove them on request to the defendants' predecessors in title, in which he recited that the latter were the owners in fee of the passageway. What we have said with regard to Dalton's purchase applies even more strongly to this recital, which is part of the very point and purview of the instrument.

It appears to us that the foregoing is enough to justify our conclusion without more elaborate reasoning. We are of opinion that the plaintiffs are not entitled to build their proposed bridge as owners of the way, and also that their rights as tenants in common do not justify it; and we do not see on what ground we can give them even a conditional license to put foundations under the surface of the way, as is done in form by the decree. *Bennett* v. *Clemence*, 6 Allen, 10. *Ingalls* v. *Newhall*, 139 Mass. 268, 273. *Byam* v. *Bickford*, 140 Mass. 31. If, however, as is said, the foundations already are in, the decree seems to make sufficient provision for the defendants' rights.*

*Decree accordingly.*

---

* This part of the decree was as follows :

"It is further ordered, adjudged, and decreed, that the plaintiffs may place under the passage suitable foundations for the walls of the building or buildings to be erected by them upon their lands adjoining said passageway on either side, if within fourteen days from the date hereof they shall file a suitable stipulation, to be approved by the court, to make to their co-owners, the defendants in the original bill, adequate compensation in money, to be hereafter determined by this court, for the use of the common land occupied by such foundations; and shall also stipulate that such use and occupation by foundation stones shall found no title by prescription, and shall not interfere with the exercise of the rights of the defendants to drain under

said passageway; and further, that any and all drain pipes disturbed or
injured in course of the work shall be fully and properly restored; and
further, that all proper and necessary precaution shall be taken in the prem-
ises to prevent the inflow or standing of tide or other water in the space
between the walls."