OTIS BROWN *vs.* INHABITANTS OF PEABODY.

Essex. March 16, 1917. — July 17, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice,* Master's report. *Deed. Way,* Private. *Municipal Corporations. Sewer. Equity Jurisdiction,* To enjoin continuing trespass, Damages.

Where a suit in equity is reserved and reported by the trial judge for determination by this court upon a master's report, to which no exceptions were taken, the parties are deemed to have accepted the master's report and are concluded by his findings of fact, and the only question to determine is what decree is to be entered upon the pleadings and the facts as found by the master.

In determining in a suit in equity the question of fact, whether the owner of a

tract of land, who conveyed it to different persons by a number of deeds made between the years 1825 and 1850 describing the land as abutting on certain private streets, intended to convey to the grantees of the several lots any right in the fee of such private streets, it is proper to consider the state of the law in this Commonwealth at the time the deeds were made.

Where a master in a suit in equity, whose findings had been accepted by the parties, in passing upon the question of fact stated above found "that the original grantor, J P, did not intend to part with the fee in the two streets in question" and further found that "the plaintiff has whatever title J P retained in these streets," it was *held* that the master was plainly right in finding that the title to the fee in the two streets in question was in the plaintiff.

In the same suit it was found by the master that the two streets never had been laid out as public ways and never had become such ways by dedication or prescription and that the use of them by the public was permissive, and it appeared that the town in which they lay, against which the suit was brought, with knowledge of the plaintiff's claim of ownership and against his protest had constructed sewers through these streets without authority to do so. *Held*, that the plaintiff was not required to accept indemnity in money damages and was entitled to relief by injunction.

In the case above described it was found by the master that the plaintiff was damaged in the sum of $250 by reason of the acts of the defendant, which sum included all past and future damages that might accrue to him, and it was *held*, that the maintenance of the sewers in the plaintiff's land was a substantial continuing trespass, for which an assessment of past and future damages could not be made rightfully without the plaintiff's consent.

In the same suit it appeared that the abuttors on the two streets generally had made connections with the sewers constructed by the defendant and that sewer assessments had been laid by the defendant and had been paid by the abuttors, and it was *held*, that, in view of these facts, the defendant should be allowed a reasonable time within which it might acquire by proper legal proceedings the right to lay and maintain its sewers in the two private streets, if it should choose to do so. Accordingly a decree was entered awarding an injunction and commanding the defendant to remove the sewers within five months unless previously the defendant should have acquired the legal right to their maintenance, the court in the meantime retaining the bill for the assessment of damages already suffered.

BILL IN EQUITY, filed in the Superior Court on January 1, 1914, to enjoin the town of Peabody from trespassing on the plaintiff's land by unlawfully maintaining sewers in Munroe Street and Hardy Street in that town, private ways alleged to be owned in fee by the plaintiff, praying also for an assessment of damages and for further relief.

The case was referred to a master, to whose report no exceptions were filed. Later the case came on to be heard upon the bill and answer and the master's report before *Stevens*, J., who reserved and reported it for determination by this court.

*J. J. Sheehan,* for the defendant.

*S. H. Donnell,* for the plaintiff.

CROSBY, J.  This is a bill in equity brought to enjoin the defendants from maintaining in and under Munroe and Hardy streets, in Peabody, certain main drains and common sewers laid by the defendants; and for an assessment of damages caused to the plaintiff thereby.

It is the contention of the plaintiff that he is the owner of the fee in the above named streets, that they are private ways and are subject only to the rights of certain owners of lands abutting upon the streets to pass over them.

The defendants deny that the plaintiff is the owner of the fee in the streets, and contend that they are public ways by prescription.

1. The case was referred to a master to whose findings of fact no exceptions were taken.  The judge of the Superior Court who heard the case reserved it for our consideration upon the bill, answer and master's report, with leave to exhibit at the arguments before the full court the plan referred to in the master's report. Under these circumstances, the parties are deemed to have accepted the master's report, and are concluded by his findings of fact.  *Hillier* v. *Farrell,* 185 Mass. 434.  *Lipsky* v. *Heller,* 199 Mass. 310.  The question is to determine what decree is to be entered upon the facts as found by the master.

2. The earliest deed in evidence to prove the plaintiff's title was from the town of Danvers to Joseph Poor, Jr., and Jesse Parker, and is dated September 4, 1809.  Soon afterwards, by deed dated December 13, 1809, Parker conveyed his interest in the land described in the first deed to Poor.  From 1809 to the time of his death in 1850, Poor cut up the land into building lots and conveyed them to different persons by sixteen deeds, all of which were duly recorded and all but one were recorded before the year 1850.

The first of these deeds, in which reference is made to a right of way, was given to William Bushby and is dated April 13, 1825. In this deed as well as in all the others except one, reference is made to one or both of the ways in question by different forms of expression.  In some the land conveyed is bounded on a way, in others the lines run to the way, and in still others the land is conveyed with a right of passage over the way; in one the land is

conveyed "with the privilege of using all the ways I have laid out in common with me and others for the purpose of passing to and from said premises with teams and otherwise on all occasions."

When these ways were established by Joseph Poor, Jr., and before 1851, it was well settled in this Commonwealth that a deed of land abutting upon a way did not convey a fee in any part of the way. *Tyler* v. *Hammond,* 11 Pick. 193, 213. *O'Linda* v. *Lothrop,* 21 Pick. 292, 295.

The rule as stated in the above cases prevailed in 1851, but it has been somewhat modified by later decisions of this court. It was held in *Crocker* v. *Cotting,* 166 Mass. 183, and *Frost* v. *Jacobs,* 204 Mass. 1, that where a way is described as a boundary in a conveyance of land, it is presumed to mean the middle of the way if the way belongs to the grantor; but as was said in *Crocker* v. *Cotting, supra,* "it is not an absolute rule of law irrespective of manifest intention, like the rule in Shelley's case, but is merely a principle of interpretation adopted for the purpose of finding out the true meaning of the words used."

This presumption of fact however may be overcome if the language used and the other evidence indicate a different intention. It is not to control against a manifest purpose not to convey any right in the fee.

In determining whether Joseph Poor, Jr., the original grantor of the lots, intended to convey to any of his grantees a fee in the ways in question, the state of the law when the deeds were given may be considered in determining the meaning and purpose of the words used. *Staigg* v. *Atkinson,* 144 Mass. 564, 569. *Hamlen* v. *Keith,* 171 Mass. 77, 79.

The master finds that the title to the streets subject to the easement in the abutters is in the plaintiff. He also specifically finds "that the original grantor, Joseph Poor, did not intend to part with the fee in the two streets in question." He further finds that "the plaintiff has whatever title Joseph Poor retained in these streets, he [the plaintiff] having received the same by various mesne conveyances and assignments."

An examination of the above mentioned deeds given by Joseph Poor does not show that the findings were not warranted.

In view of the law as it stood when the deeds were given, and the express finding that no conveyance of the fee in the streets

was intended to be granted, the master was plainly right in his finding that the title to the fee in Munroe and Hardy streets was vested in the plaintiff.

3. The master finds that the streets have never been laid out as public ways and that they have not become such ways, either by dedication or by prescription. The report recites that there was evidence that for nearly forty years "Private way" signs were maintained uninterruptedly at the end of each street, and were not only known to be there by the town but sign painters employed by the town have repainted them and put them up again at least once in recent years.

He further finds, that no repairs of consequence have been made by the town upon either Munroe Street or Hardy Street but that there was abundant evidence to show that such repairs were made by the abuttors; and also, that the use by the public was permissive.

As the evidence is not reported, these findings must stand. *Jennings* v. *Tisbury,* 5 Gray, 73. *Durgin* v. *Lowell,* 3 Allen, 398. *Moffatt* v. *Kenny,* 174 Mass. 311. *Weldon* v. *Prescott,* 187 Mass. 415.

4. At the time it was decided by the defendant's officers to lay the sewers, the plaintiff went to the sewer commissioners and asked them what they intended to do on Hardy and Munroe streets, and was told by one of the commissioners that the town was going to lay sewers there. The plaintiff told the commissioner that he protested against such action, that he owned the land included within the streets, and that the town had no right to construct the sewers. The commissioner replied in substance that the town could do whatever was necessary to lay the sewers and that the plaintiff could resort to the courts if he had any rights in the land in the streets. Thereafter, in the year 1906, the sewers were laid.

It thus appears that the defendant, with full knowledge of the plaintiff's claim to the ownership of the fee in the streets and against his protest, committed the trespasses complained of and constructed the sewers for their own benefit and convenience.

Under these circumstances, the plaintiff, against his consent, is not to be deprived of his property and is not required to accept indemnity in money damages, but is to be protected in the enjoyment of his property by injunctive relief. *Downey* v. *H. P. Hood & Sons,* 203 Mass. 4, 12. *Perley* v. *Cambridge,* 220 Mass. 507.

The master found that the plaintiff was damaged in the sum of $250 by reason of the acts of the defendant, which sum included all past and future damages that might accrue to him.   The maintenance of the sewers in the plaintiff's land is a substantial continuing trespass, and an assessment which included past and future damages could not, without the consent of the parties, properly be made.   *Aldworth* v. *Lynn*, 153 Mass. 53, 56.

It appears that the abuttors on the streets (some of whom maintain establishments employing a great many persons) generally have connected with the sewers so laid by the defendant, and that sewer assessments have been levied by the town and paid by the abuttors.   In view of these facts, the defendant should be allowed a reasonable time within which it may by proper legal proceedings acquire the right to lay and maintain the sewers in Munroe and Hardy streets, if it shall elect to do so.

Accordingly, a decree is to be entered granting an injunction and commanding the removal of the sewers within five months from the date of the rescript, unless previously the defendant shall have acquired the legal right for their maintenance, while retaining the bill for the assessment of damages already suffered.

*Ordered accordingly.*