ARIOCH W. ERICKSON & others, trustees, *vs.* OLIVER AMES & others, trustees, & others.

Suffolk.    March 7, 1928.— September 20, 1928.

Present: RUGG, C.J., PIERCE, WAIT, & SANDERSON, JJ.

*Boundary. Deed,* Construction. *Way,* Private. *Land Court,* Exceptions, Findings of fact. *Stare Decisis. Words,* "By," "On."

Upon exceptions to rulings by a judge of the Land Court at the hearing of a petition for registration of title to real estate, only questions of law are presented to this court and findings of fact made by the judge of the Land Court in a decision filed by him must stand if warranted on any view of the evidence with its justifiable inferences.

While, relating to the rule of law governing boundaries "by" or "on" private ways, there have been some fluctuations in the form and emphasis of expression in opinions of this court during the six score years which have elapsed since the words of Chief Justice Parsons in *Clap* v. *M'Neil,* 4 Mass. 589, the underlying principle on which they all rest is that the intent of the parties in each instance was ascertained from the words

used in the written instrument interpreted in the light of all the attendant facts.

Expressions in some of the earlier opinions which bear an aspect not in accordance with the rule above stated may well have been the justifiable basis of a more or less widespread opinion in 1822 as to the state of the law respecting the determination of such a boundary, and such view must be given weight as an important factor in ascertaining the intent of the parties to a particular instrument executed and delivered during that period: but, while an important, it is not as a matter of law a decisive factor.

At the hearing of a petition for the registration of a title to the fee of a private way, a determining issue was, whether the fee was given to a predecessor in title to the petitioner, one of several heirs at law of the deceased owner of a tract which included the way, by commissioners appointed in partition proceedings in 1822. It appeared that the entire tract divided had included three private ways; that the description of tracts set off to the other heirs at law bounded "by" or "on" the private ways; that the description of the tract set off to the petitioner's predecessor in title was "Estate left undivided . . . Reserving a right in the passage way" in question; and that subsequently that heir conveyed to the petitioner all his "right, title and interest in and to . . . [the way] . . . being the fee of the soil . . . subject to the rights and privileges in the same granted to the owners of the building lots in said court." The petitioner contended that no part of the fee of the way was included in the lots set off to the other heirs but that it was entirely included in the tract set off to his grantor. The judge of the Land Court, taking into consideration all circumstances, found that the commissioners intended to include a fee to the middle of the way with the tracts severally set off, and dismissed the petition. On exceptions, this court *held*, that

(1) It was proper for the judge of the Land Court to consider the circumstances in determining the intent of the commissioners;

(2) The intent of the commissioners being a question of fact to be determined in part by the circumstances, weight was given to the findings of the trial judge;

(3) It could not quite be said that all the circumstances disclosed failed to warrant the findings and the final inference drawn;

(4) The exceptions were overruled.

PETITION, filed in the Land Court on October 28, 1926, for registration of "'the fee of the soil in the passageway formerly called 'Sweetsor's Court' now known as 'Chickering Place.'"

In the Land Court, the case was heard by *Davis*, J. Material facts are stated in the opinion. He filed a decision ordering the petition dismissed. The petitioners alleged exceptions.

*J. Noble*, (*C. P. Bartlett & W. J. Kelleher* with him,) for the petitioners.

*W. I. Morse,* (*J. P. Wright* with him,) for the respondents Ames and others, trustees.

*H. B. Newton,* (*H. E. Weir* with him,) for Freeman C. Wight and another.

*W. J. O'Malley,* Assistant Corporation Counsel, for the city of Boston, was present but did not argue nor file a brief.

RUGG, C.J.    This is a petition to register title in fee simple, subject to rights of way, to a strip of land between Washington Street and Harrison Avenue in Boston, over which lies a private way known as Chickering Place.

The petitioners own the land and building at the southeasterly corner of Chickering Place and Washington Street. The respondents, the Ames Trustees, own the land and buildings on the north side of Chickering Place throughout its length.    Other respondents own land abutting on Chickering Place.

The chief question is whether the petitioners own the fee of the entire Chickering Place.

Prior to 1822 title to the land included within the lines of Chickering Place, together with land on each side, had been acquired by Lemuel Hayward by two deeds, one from Nathaniel Sweetser and the other from Jacob Sweetser.    He also owned land southerly of what is now Hayward Place, and that was included in the partition proceedings as was all his other real estate.    After his death partition was made of his real estate by three commissioners appointed upon proceedings in the Supreme Judicial Court in 1822.    The report of the commissioners was approved and accepted by the court.    Accompanying that partition was a plan showing a subdivision of the Washington (then Newbury) Street property into lots with two passages running easterly from Washington Street and a third passageway at the east connecting the two; the lots having buildings thereon being left unnumbered and the vacant lots being numbered.    The northerly passageway thirteen feet wide is the present Chickering Place.    The southerly passageway is the present Hayward Place and the connecting passageway at the east is within the present limits of Harrison Avenue.

In this partition, each of the lots set off to the several parties other than Joshua H. Hayward was described by metes and bounds together with the free and uninterrupted use and privilege in the abutting passageways. The portion of the estate set off to Joshua H. Hayward was described, not by metes and bounds, but, at the end of the commissioner's report, as "Estate left undivided for Joshua H. Hayward Sweetser Estate in Newbury Street Reserving a right in the passage way 13 feet wide." The estate thus set off in severalty to Joshua H. Hayward included the area north of Chickering Place to a depth recited as two hundred and eighty-nine feet from Newbury, now Washington, Street. The "Sweetser Estate in Newbury Street" as owned by Lemuel Hayward covered all the land now owned by the parties to this suit including the fee of the land in Chickering Place, but not that in Hayward Place or that in the other passageway now included in Harrison Avenue.

Each of the other lots abutting on said passageways was described as bounding "by" or "on" the respective passageways (Chickering Place, Hayward Place and the easterly way now in Harrison Avenue) with a clause as to free and uninterrupted privilege therein similar to that in the description of the parcel set off, for example, to Sarah H. Hayward, through whom the respondents claim a part of their estate. To her was set off a parcel on the easterly side of Newbury Street bounded southerly "by said passage way thirteen feet wide leading to Newbury Street there measuring one hundred and five feet and three inches, with a free and uninterrupted use and privilege in and to said passage way leading to said Newbury Street, which is to be kept open and used in common for the benefit of the owners of estates adjoining." The respondents also claim a part of their estate through Joshua H. Hayward. The contention of the petitioners is that, by the rules for construction of deeds established previous to 1822 and then prevailing, the portion set off to Joshua H. Hayward included also the fee and soil of Chickering Place, and that no part of the fee and soil of Chickering Place passed to Joshua's brothers and sisters under the description of the lots set off and assigned to them.

The petitioners' title to the land on which their building stands comes partly through Harriet Hayward, daughter of Lemuel, and partly from the trustees for his son, Joseph. The Ames Trustees' title is through Joshua H. and Sarah H., son and daughter of Lemuel Hayward. There are four of these deeds from Joshua,— two dated September 11, 1823, the third dated October 11, 1823, and the fourth dated December 31, 1835. All of these deeds describe the premises conveyed as bounding southerly "on" or "by" the thirteen-foot passageway (Chickering Place). By quitclaim deed dated February 3, 1836, Joshua conveyed to his brother, Joseph H. Hayward, through whom the petitioners claim their title, all his "right, title and interest in and to Sweetzer's Court [now Chickering Place], so-called in Boston, being the fee of the soil in the passageway in said court and subject to the rights and privileges in the same granted to the owners of the building lots in said court." In precisely similar language the same deed included a grant of Joshua's interest in the fee of the soil of Hayward Place, and the unnamed passageway connecting the eastern ends of Chickering Place and Hayward Place. This deed is witnessed by Sarah H. Hayward and acknowledged before Charles Hayward, sister and brother respectively of the grantor and grantee. The evidence was undisputed, and it was conceded by each of the parties to this suit that their adversaries have whatever title passed to their respective predecessors in the partition of 1822. The petitioners introduced in evidence certain conveyances in the respondents' chain of title which, they contended, were material and competent evidence, if as a matter of law the language of the partition deeds is not conclusive of the intent of the parties. One of these conveyances is a mortgage given in 1876, through foreclosure of which the Ames Trustees derive title to a lot near Harrison Avenue, which was set off in the partition to Sarah H. Hayward; the other is a deed to Robert and Freeman Wight of a portion of the width of their estate by their immediate predecessor in title dated February 28, 1903. The land conveyed by this deed is part of Lot 9, which was set off in the partition of 1822 to Charles Hayward. This mortgage and

deed refer respectively to the *northerly line* and *southerly line* of Chickering Place as "boundaries of the granted premises."

The judge of the Land Court filed a decision setting out at length the reasons leading him to the conclusion that the petitioners have not title to the fee and soil of Chickering Place beyond such portion as may be owned by them as a part of their lot on the corner of Chickering Place and Washington Street and, since their title to that tract was not before him, he ordered the petition dismissed. He granted certain requests for rulings in substance that the effect of the proceedings for partition was to vest in those, to whom the several parcels abutting on Chickering Place were set off, the fee and soil of that passageway to its center line between the side lines of the several parcels extended. The petitioners excepted to the granting of these requests and to the ruling as to the state of their title in the fee of the passageway.

The case comes before us by exceptions. Hence only questions of law are presented, and the findings of fact made by the Land Court must stand if warranted on any view of the evidence with its justifiable inferences. *Marvel* v. *Cobb*, 204 Mass. 117. *Boston Five Cents Savings Bank* v. *Massachusetts General Hospital*, 255 Mass. 583, 586. *Eaton* v. *Eaton*, 233 Mass. 351, 369. G. L. c. 185, § 15. The general finding against the petitioners imports a finding of all subsidiary facts essential to that result, so far as permissible on the evidence. *Adams* v. *Dick*, 226 Mass. 46, 52. This case presents chiefly for interpretation the construction of a written instrument. If that were all, no deference could be paid to the decision of the trial judge and this court would decide its meaning. *Creighton* v. *Elwell*, 243 Mass. 580, 583. *Gould* v. *Converse*, 246 Mass. 185, 189. *Farber* v. *Mutual Life Ins. Co. of New York*, 250 Mass. 250, 253. The significance of words takes color from the time and circumstances in which they are used, and the intent of parties is almost always a matter of fact. Therefore weight will be given to the findings made. *Atlantic Maritime Co.* v. *Gloucester*, 228 Mass. 519, 521, 522. *Webber* v. *Cox*, 256 Mass. 595, 597.

There is much to support the main contention of the
respondents that upon the state of the law as it had been
prior to 1822, manifested by authoritative judicial utter-
ances, and as it was understood to be as late as 1838, a bound-
ary "by" or "on" a public way in an instrument transferring
title to real estate passed no title to the fee of the land under
the way, but only to the line of the way.   See *Clap* v. *M'Neil*,
4 Mass. 589, and *Alden* v. *Murdock*, 13 Mass. 256, decided
before 1822, and *Sibley* v. *Holden*, 10 Pick. 249, *Tyler* v.
*Hammond*, 11 Pick. 193, 213, and *O'Linda* v. *Lothrop*, 21
Pick. 292, decided between 1822 and 1838.   See also *Brown*
v. *Peabody*, 228 Mass. 52, 55.   Under these adjudications
rendered prior to *Newhall* v. *Ireson*, 8 Cush. 595, decided in
1851, a description like that in the case at bar might have
been thought to transfer title only to the edge of the way.
But it was said of this group of cases by Chief Justice Shaw
in *Phillips* v. *Bowers*, 7 Gray, 21, 24, that they do not show
that the point "whether by deed of land bounding on a
highway, the grantor conveys all his title to the fee of the
soil to the middle line of the way, or only to the side of the
way, next to the land . . . was expressly raised and judi-
cially decided on, though perhaps two of them imply that the
judges giving the opinions" understood the law to be that
title to the fee of the way would be excluded by such descrip-
tion.   We do not attempt to review the cases there cited
and to justify and amplify that decision.   We accept it as
conclusive.   The subject was fully discussed with review of
earlier cases by Gray, J., in *Boston* v. *Richardson*, 13 Allen,
146, 152, 153–155.   It there was said: "In some opinions
of this court it has indeed been implied or asserted that a
boundary upon a road or street passed no title in the land
under it.   But in the more recent decisions the general rule
has been repeatedly declared, and must now be regarded as
the settled law of the Commonwealth, overruling whatever
is irreconcilable in the earlier cases, that a deed bounding
land generally by a highway, with no restrictive or control-
ling words, conveys the grantor's title in the land to the
middle of the highway. . . . The question whether any
grant extends to the side line or the centre line of the high-

way is doubtless, according to the statement made by Chief Justice Shaw in *Webber* v. *Eastern Railroad*, 2 Met. 151, and approved by the court in *Codman* v. *Evans*, 1 Allen, 446, 'a question of construction in each particular case, and depends, as in all other cases, upon the intent of the parties, as expressed in the descriptive parts of the deed, explained and illustrated by all the other parts of the conveyance, and by the localities and subject matter to which it applies.'" Again the matter was before the court in *Crocker* v. *Cotting*, 166 Mass. 183, where it was said by Holmes, J., at page 185, "The rule by which the mention of a way as a boundary in a conveyance of land is presumed to mean the middle of the way, if the way belongs to the grantor, is not an absolute rule of law irrespective of manifest intention, like the rule in Shelley's case, but is merely a principle of interpretation adopted for the purpose of finding out the true meaning of the words used. *Codman* v. *Evans*, 1 Allen, 443, 446"; and at page 187, "As late as 1855, the application of the now accepted rule of law to boundaries upon private passageways was uncertain. *Morgan* v. *Moore*, 3 Gray, 319, 320. In 1857, the court were divided on the question. *Fisher* v. *Smith*, 9 Gray, 441." In *Gray* v. *Kelley*, 194 Mass. 533, after quoting from *Boston* v. *Richardson*, 13 Allen, at pages 154, 155, as to the effect of deeds bounding the conveyed parcel on a way, at page 537 Chief Justice Knowlton said: "This shows the fundamental and principal reason of the rule. To this reason is added the probability that the grantor, if bounding on a street, under which the land presumably would be of little value to a private owner, would not be expected to care much to retain the title after parting with all of his property at the side of the street. But this rule has never been held to be anything more than a rule of construction, to be used in ascertaining the true meaning of the parties. For a time it was doubted whether it should apply to conveyances upon a private way; for the reason of it is less strong in its application to such conditions. On this question the court divided in *Fisher* v. *Smith*, 9 Gray, 441. See *Crocker* v. *Cotting*, 166 Mass. 183, 187. But it is now well established that, in case of a conveyance giving an

ordinary private way as a boundary, if the title of the grantor extends to the centre of the way, he will be presumed to have intended to pass title to the centre of the boundary, unless there is something in the deed to show a contrary intention. . . . It is always a question what is the intention of the parties, and ordinarily the intention to retain the title in private land, over which a right of way is granted, is more easily indicated than the intention to limit one's grant by the side line of a public street when the grantor owns to the centre of it. Nothing is ever conveyed except what is included within the boundaries of the lot described, and the language of the deed must be scrutinized, in its application to the locus, to see where the true boundaries are." This principle was reaffirmed in *Frost* v. *Jacobs*, 204 Mass. 1, 4. It must be taken to be the settled law of the Commonwealth. Perplexing questions arise in the application of the principle to varying facts. *Lemay* v. *Furtado*, 182 Mass. 280, 282. *McKenzie* v. *Gleason*, 184 Mass. 452, 457. *Gould* v. *Wagner*, 196 Mass. 270, 275. *Kaatz* v. *Curtis*, 215 Mass. 311, 314. *Lynnfield* v. *Peabody*, 219 Mass. 322, 336, 337. *Brown* v. *Peabody*, 228 Mass. 52, 55. *McCarthy* v. *Everett*, 234 Mass. 231, 233.

The result of these decisions is that, while there have been some fluctuations in the form and emphasis of expression during the six score years which have elapsed since the words of Chief Justice Parsons in *Clap* v. *M'Neil*, 4 Mass. 589, the underlying principle on which they all rest is that the intent of the parties in each instance was ascertained from the words used in the written instrument interpreted in the light of all the attendant facts. That is the general principle governing the interpretation of deeds, *Simonds* v. *Simonds*, 199 Mass. 552, 554, and of other instruments creating rights in property, *Eustace* v. *Dickey*, 240 Mass. 55, saving only that the intent thus found be not repugnant to some positive rule of law or the terms of the instrument. Expressions in some of the earlier cases, which bear a contrary aspect, are to be taken as not essential to the point decided and hence not binding upon the court or falling within the protection of the doctrine of *stare decisis*. See *Swan* v. *Justices of the Superior Court*, 222

Mass. 542, 545; *Kennedy* v. *Commissioner of Corporations &*
*Taxation*, 256 Mass. 426, 431. Those expressions may well
have been the justifiable basis of a more or less widespread
opinion in 1822 as to the state of the law respecting a case
like the present. That view as to the state of the law must
be given weight as an important though not decisive factor
in ascertaining the intent of the parties to a particular instru-
ment. It has been said that such state of the law must be
"cautiously used." *Hamlen* v. *Keith*, 171 Mass. 77, 79.
But it may permit a just result not otherwise possible.
*Brown* v. *Peabody*, 228 Mass. 52.

There are indications in the record that the trial judge
thought the law to have been settled in 1822, to the effect
that such descriptions as set off the several parcels abutting
on Chickering Place to different owners, in the report of the
commissioners, transferred the fee in the private way now
known as Chickering Place throughout its entire width and
length to Joshua H. Hayward. As already pointed out, that
is not so. If that had been the settled law at that time, there
would be difficulty in supporting the conclusion of the trial
judge. Parties have a right to contract, and commonly do
contract, in view of settled rules of property established by
authoritative decisions of courts of the jurisdiction. Having
entered into an engagement as to real property in the light
of such declared rules, there would be grave doubt about
holding them at a later time to some other standard. It is
a principle of wide application that what "a court declares
to be the law always was the law, notwithstanding earlier
decisions to the contrary." *Ross* v. *Freeholders of Hudson*,
90 N. J. Law, 522, 527. *Center School Township* v. *State*,
150 Ind. 168, 173. *Falconer* v. *Simmons*, 51 W. Va. 172,
173–176. 1 Blackstone's Com. 70. Yet, notwithstanding
that principle and not at all incompatible with it, is another
often asserted; "The sound and true rule is, that if the con-
tract when made was valid by the laws of the State, as then
expounded by all the departments of its government, and ad-
ministered in its courts of justice, its validity and obligation
cannot be impaired by any subsequent act of the legislature of
the state, or decision of its courts, altering the construction of

the law." *Ohio Life Ins. & Trust Co.* v. *Debolt,* 16 How. 416, 432. *Gelpcke* v. *Dubuque,* 1 Wall. 175, 206. (See *Tidal Oil Co.* v. *Flanagan,* 263 U. S. 444, 452.) *Havemeyer* v. *Iowa County,* 3 Wall. 294, 303. *Olcott* v. *Supervisors,* 16 Wall. 678, 690. *County of Ralls* v. *Douglass,* 105 U. S. 728, 732. *Anderson* v. *Santa Anna,* 116 U. S. 356, 361, 362. *Taylor* v. *Ypsilanti,* 105 U. S. 60, 71. In such instances, as applied to contracts affecting vested property interests, the clearing away of errors, which have crept into decisions by overruling what has hitherto been said, is not infrequently treated as prospective in operation. *Douglass* v. *County of Pike,* 101 U. S. 677, 687. *Bank of Philadelphia* v. *Posey,* 130 Miss. 825. *Falconer* v. *Simmons,* 51 W. Va. 172, 177, 178. See for collection and review of cases, 18 Colum. L. Rev. 230–251. We do not now undertake to delimit with accuracy these principles and their scope and application, but reference is made to them to show that, whatever their precise sweep, they have not been overlooked but are regarded as not relevant to the case at bar in view of the state of our law in 1822 and in the intervening years, as already elaborated.

The findings of fact are summarized in a brief paragraph by the trial judge: "The laying out of the three passageways, the careful provisions as to their use in common as appurtenant to all of the lots abutting on them, the fact that this was a partition in which all of the land was to be divided, the absence of any language that would, on the construction contended for by the petitioners, dispose of the fee in the other two passageways, all seem to me to show a clear intent, consistent with the presumption which must govern unless otherwise rebutted, to apportion the fee in the passageways to the respective lots abutting thereon. The land set off to Joshua was simply the remaining land of the Sweetser Estate, which did not cover the other passageways, not included in the previous assignments to the other parties to the partition, and was fairly designated as 'Sweetser Estate'."

It cannot quite be said, in our opinion, that all the circumstances disclosed fail to warrant these findings and the final inference drawn. The case at bar is fairly within the authority of *Clark* v. *Parker,* 106 Mass. 554, also a case aris-

ing out of a return of commissioners to make partition, where the order for partition was made in 1842.

It is not necessary to discuss other questions argued. They become immaterial in view of our conclusion on the main point.

*Exceptions overruled.*