JAMES E. TATTEN & others *vs.* DEPARTMENT OF PUBLIC UTILITIES.

Suffolk.   May 4, 1953. — July 2, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Supreme Judicial Court*, Postponement of decision. *Equity Pleading and Practice*, Stay, Review of order of department of public utilities.

In a suit in equity under G. L. (Ter. Ed.) c. 25, § 5, by a landowner for review of an order by the department of public utilities under c. 164, § 75C, inserted by St. 1950, c. 462, authorizing a purported natural gas pipe line company to take by eminent domain rights for a pipe line in the plaintiff's land, and of a subsequent order refusing to revoke the first order, where it appeared that the company's certificate of convenience and necessity from the Federal power commission requisite for its status as a natural gas pipe line company under c. 164, § 75B, inserted by St. 1950, c. 462, had been invalidated by a Federal court, that further proceedings in the matter were in progress before the Federal power commission, that a decision in those proceedings would clarify the whole situation and eliminate some or all of the questions involved in the suit in equity, and that an immediate decision of the suit by this court would tend to confuse the situation and was not

required for protection of the plaintiff's rights, this court concluded that the decision of the suit should be deferred for a reasonable time to await the result of the Federal proceedings and directed the entry of an appropriate interlocutory decree for a stay accordingly.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on January 28, 1953.

Algonquin Gas Transmission Company was allowed to intervene.

The suit was reserved and reported by *Counihan,* J., without decision.

*J. Fuller Morgan,* (*Thomas D. Lavelle* with him,) for the plaintiffs.

*Henry M. Leen,* (*Harold B. Dondis* with him,) for the intervener.

*Matthew S. Heaphy,* Assistant Attorney General, for the defendant.

*James S. Eastham & William A. Hill,* by leave of court, submitted a brief as amici curiae.

QUA, C.J. This unusual case comes to us as a bill in equity under G. L. (Ter. Ed.) c. 25, § 5, brought by three owners of lands in Medway to review an order of the department dated October 22, 1951, and a second order, dated January 7, 1953, refusing to revoke the first order. The case was reserved and reported by the single justice.

The order of October 22, 1951, was made under G. L. (Ter. Ed.) c. 164, § 75C, inserted by St. 1950, c. 462, and authorized Algonquin Gas Transmission Company as a natural gas pipe line company to take by eminent domain perpetual and exclusive rights and easements to construct and maintain a pipe line for natural gas over a series of parcels, including those of the plaintiffs. Section 75C empowered the department to authorize a natural gas pipe line company to take by eminent domain under c. 79 lands, rights, and easements necessary for such a pipe line. Section 75B, also inserted by St. 1950, c. 462, provides in part that a corporation holding a certificate of public convenience and necessity under the Federal natural gas act (U. S. C. [1946 ed.] Title 15, §§ 717–717w) shall be consid-

ered a natural gas pipe line company upon filing with the department a certified copy of such certificate. The ground of attack upon both orders of the department is that Algonquin either never had or has ceased to have a valid certificate under the Federal act.

The facts appear from a "case stated" which was before the single justice. On February 27, 1951, the Federal power commission issued to Algonquin a certificate to construct and operate a pipe line system in the States of New Jersey, Connecticut, Rhode Island and Massachusetts. Under the Federal act the order of the Federal power commission was subject to review in the Federal courts (§ 717r [b]), and on March 3, 1951, Northeastern Gas Transmission Company, which had also sought rights in the same territory for which Algonquin had been granted a certificate, filed its petition for review in the United States Court of Appeals for the third circuit. It is provided, however, by the Federal act, U. S. C. (1946 ed.) Title 15, § 717r (c), that the commencement of proceedings for review "shall not, unless specifically ordered by the court, operate as a stay of the Commission's order." There is no contention that the court made such specific order. When the department of public utilities made its order of October 22, 1951, Northeastern's petition for review of the order of the Federal power commission had been filed, but the Court of Appeals had not acted upon it. Whether these facts were before the department the record does not disclose. After the order of the department of October 22, 1951, Algonquin proceeded to make the necessary takings, including those over lands of the plaintiffs. Its main line is now 99.9% complete from Lambertville, New Jersey, to Everett, Massachusetts, at a cost in excess of $45,000,000. The total length of its system in this Commonwealth, including laterals, is approximately two hundred miles. Its pipe line was completed through the lands of the plaintiffs by December 5, 1951. The plaintiffs have pending in the Superior Court petitions for the assessment of damages for the takings of their lands, and a large number of cases involving damages for similar takings are

pending. On April 4, 1952, the Court of Appeals rendered its decision setting aside the order of the Federal power commission granting the certificate to Algonquin, not on the merits of the controversy between Algonquin and Northeastern, but because of its opinion that Northeastern as an intervener had been dismissed from the proceedings before the commission without the hearing to which proper procedure under the Federal act entitled it. *Northeastern Gas Transmission Co. v. Federal Power Commission,* 195 Fed. (2d) 872. By reason of a stay by the Court of Appeals and the filing of a petition for certiorari in the Supreme Court of the United States (denied sub nominee *Federal Power Commission v. Northeastern Gas Transmission Co.* 344 U. S. 818) the mandate from the Court of Appeals did not reach the Federal power commission until October 27, 1952. On October 31 that commission reopened the proceedings before it. The rehearing began on November 25, 1952, and has since been carried on almost continuously and according to the case stated is "presently in progress." This is the latest information we have.

Among the questions presented by the case are these: whether the decree of the Court of Appeals rendered the Federal certificate invalid ab initio or from the filing of the petition in the Court of Appeals or only from the receipt of the mandate; whether a Federal certificate that is still subject to review in a Federal court is the kind of certificate the holding of which will entitle a company to "be considered as a natural gas pipe line company" under G. L. (Ter. Ed.) c. 164, § 75B; whether the decree invalidating the Federal certificate rendered invalid the order of the department of public utilities which was based upon that certificate; whether the department had power to revoke its order of October 22, 1951, and was required in law to do so; what effect, if any, the invalidation of Algonquin's Federal certificate had upon easements already acquired by eminent domain under State law; and whether the entire matter of the disposition of acquired easements is subject to the control of the Federal power commission under the

natural gas act. See especially § 717f (b). Some of these questions appear to be difficult, and some of them depend upon interpretations of Federal law.

But underlying everything else is the great controversy whether Algonquin or its rival Northeastern will be permitted to serve the disputed New England territory, or whether the territory will be divided between them or conceivably allotted to some third pipe line company. This issue, according to the facts supplied to us, is already in an advanced stage of litigation before the only tribunal competent to determine it. It seems apparent that, as a practical matter, when that issue has been resolved many, if not all, of the questions in this present suit will disappear. If the Federal certificate finally goes to Algonquin it will be a simple matter for that company to begin the operation of its present practically completed pipe lines, and this will be true whether or not new takings of the same locations will be technically necessary. If the certificate or certificates go to Northeastern or to other pipe line companies other formalities may be required, but it is almost inconceivable that the pipe lines now so fully completed at great expense will not be employed for the purpose for which they were built. At the very least the forthcoming decision by the Federal power commission will clarify the present confused situation and reduce the number of live questions. From a practical standpoint it does not seem wise that we should attempt to make a decision now which would apparently either confirm in possession a company which the Federal power commission may soon exclude from exercising any rights, or would upset rights which in practical effect that commission may soon confirm. To do either of these things now would only add to the existing confusion.

Justice to the plaintiffs as landowners does not require an immediate but actually inconclusive decision on our part. With them it is not a matter of preventing an unlawful encroachment upon their property. The pipe line has already been laid. There is no likelihood that it will be finally abandoned. Their rights will not be prejudiced.

It is not in the public interest that action be taken now which upon one alternative might possibly tend to expose the line to depredations by various landowners.

Ordinarily we should feel that a suit to test an order of the department of public utilities should be fully decided on its merits as promptly as possible. This case presents a special and peculiar situation in which a different disposition of the case seems presently advisable. There is ample authority for the proposition that a court may properly postpone for a reasonable time the decision of a cause where vital matters in the administrative field remain undetermined. *General American Tank Car Corp.* v. *El Dorado Terminal Co.* 308 U. S. 422, 433. *Addison* v. *Holly Hill Fruit Products, Inc.* 322 U. S. 607, 619–623. *Thompson* v. *Texas Mexican Railway,* 328 U. S. 134, 151. In *Brown* v. *Peabody,* 228 Mass. 52, this court in holding that a town had unlawfully constructed a sewer in the plaintiff's land, before requiring its removal, granted the defendant time in which to take the right to maintain it. To the same effect is *Suburban Land Co. Inc.* v. *Billerica,* 314 Mass. 184, 194. *Winslow* v. *Baltimore & Ohio Railroad,* 188 U. S. 646, 659–661, is a case similar in principle.

For all these reasons we are of opinion that decision of this cause should be stayed for a reasonable time pending the expected determination by the Federal power commission and perhaps also for a time thereafter. We are aided in reaching this result by the fact that the Supreme Court of New York came to a similar conclusion in a case involving a very similar situation relating apparently to a portion of this same pipe line lying in that State. *Algonquin Gas Transmission Co.* v. *E. W. Realty Corp.* 281 App. Div. (N. Y.) 898.

It is therefore ordered that an interlocutory decree be entered staying proceedings in this cause until a decision shall be made by the Federal power commission in the matter now pending before it as to the issuance of a certificate of public convenience and necessity; provided, however, that if such decision is not made within six months of the

date of the rescript presently to be filed the matter of a
further stay for a reasonable time shall be in the discretion
of the single justice; and provided further that the single
justice may in his discretion extend the stay for a reason-
able time after the decision of the Federal power commis-
sion during the pendency of any further proceedings in the
courts relative thereto.

*So ordered.*